IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION


DIVERSICARE LEASING CORPORATION,
d/b/a OUACHITA NURSING AND
REHABILITATION CENTER;
DIVERSICARE MANAGEMENT SERVICES
COMPANY; AND ADVOCAT, INC.                                               PLAINTIFFS


VS.                                    CASE NO. 11-CV-1037


BARBIE NOWLIN, AS SPECIAL PERSONAL
REPRESENTATIVE OF THE ESTATE OF NANCY
LOUISE JONES, DECEASED, AND ON BEHALF OF
THE WRONGFUL DEATH BENEFICIARIES OF
NANCY LOUISE JONES                                                       DEFENDANT

## MEMORANDUM OPINION

Plaintiffs Diversicare Leasing Corporation d/b/a Ouachita Nursing and Rehabilitation Center

("ONRC"), Diversicare Management Services ("Diversicare"), and Advocat, Inc. ("Advocat") filed

a Complaint to Compel Arbitration seeking to enjoin an action filed by Defendant Barbie Nowlin

in the Circuit Court of Ouachita County.  (ECF. No. 1).  This matter is now before the Court on

Defendant's Motion for Summary Judgment.  (ECF No. 6).  Plaintiff has filed a Response and Cross

Motion for Summary Judgment.  (ECF No. 9).  Defendant has replied.  (ECF No. 13).  The Court

finds this matter ripe for consideration.

## BACKGROUND

Nancy Louise Jones was a resident of the Ouachita Nursing and Rehabilitation Center from

December 4, 2006 to February 2, 2010.  Upon her admission to the facility, Jones signed an

admission agreement which included an addendum agreement to arbitrate.  (ECF No. 3, Exh. A).

1

The Arbitration Agreement provides that all claims in excess of $15,000.00, exclusive of interest, costs, and attorney's fees, are to be resolved exclusively by arbitration. The Agreement further states that arbitration "shall be conducted in accordance with the provisions of the Federal Arbitration Act. ... Information may be obtained and claims may be filed at any office of the National Arbitration Forum ... ." (ECF No. 3, Exh. A). The Agreement also contains a severance provision: "This agreement to arbitrate will not fail because any part, clause, or provision thereof is held to be indefinite or invalid." *Id.*

Jones passed away on February 18, 2010. On March 15, 2011, Barbie Nowlin, as Special Personal Representative for Jones' estate and beneficiaries, filed a Complaint in the Circuit Court of Ouachita County against ONRC, Diversicare, and Advocat, alleging negligence, malpractice, and violations of the Arkansas Long Term Care Resident's Rights Statute. (ECF No. 1, Exh. 1). The Complaint further alleges these entities breached duties of care owed to Jones under the Arkansas Medical Malpractice Act and the Arkansas Long Term Care Resident's Rights Statute, and had negligent hiring and staffing practices that caused personal injury and death to Jones.

On May 31, 2011, ONRC, Diversicare, and Advocat filed a Complaint to Compel Arbitration with this Court seeking to enjoin the action filed by Nowlin in the Circuit Court of Ouachita County. (ECF. No. 1). It is undisputed that Nowlin's state court claims, and the damages requested, fall within the types of claims covered by the Arbitration Agreement. However, as of July 2009, the National Arbitration Forum ("NAF"), the forum designated in the Agreement, no longer processes or administers consumer-related arbitration claims based upon pre-dispute agreements. (ECF. No. 7, Exh. A) Therefore, the NAF is no longer available as a forum for Nowlin's claims against ONRC, Diversicare, or Advocat.

2

STANDARD OF REVIEW

The standard of review for summary judgment is well established.  The Federal Rules of

Civil Procedure provide that when a party moves for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no
> genuine dispute as to any material fact and the movant is entitled to judgment as
> a matter of law.

Fed.R.Civ.P. 56(a); *Krenik v. County of LeSueur*, 47 F.3d 953 (8th Cir.1995).  The Supreme Court

has issued the following guidelines for trial courts to determine whether this standard has been

satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is
> a need for trial-whether, in other words, there are genuine factual issues that
> properly can be resolved only by a finder of fact because they may reasonably be
> resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). *See also Agristor Leasing v. Farrow*, 826

F.2d 732 (8th Cir.1987); *Niagara of Wisconsin Paper Corp. v. Paper Indus. Union-Management*

*Pension Fund*, 800 F.2d 742, 746 (8th Cir.1986).  A fact is material only when its resolution affects

the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248.  A dispute is genuine if

the evidence is such that it could cause a reasonable jury to return a verdict for either party.  *Id*. at

252.

The Court must view the evidence and the inferences that may be reasonably drawn from the

evidence in the light most favorable to the nonmoving party.  *Enterprise Bank v. Magna Bank*, 92

F.3d 743, 747 (8th Cir.1996).  The moving party bears the burden of showing that there is no

genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Id*.  The

nonmoving party must then demonstrate the existence of specific facts in the record that create a

genuine issue for trial.  *Krenik v. County of LeSueur*, 47 F.3d at 957.  A party opposing a properly

supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. at 256.

<u>DISCUSSION</u>

Defendant Nowlin contends that the Arbitration Agreement is unenforceable for two reasons. First, she argues that the Agreement is void and unenforceable because mutuality of obligation, an essential element of contracts formed under Arkansas law, is not present. Second, Nowlin argues that because the NAF is no longer available as a forum for the parties' arbitration claims, enforcement of the Arbitration Agreement is legally impossible. Plaintiffs ONRC, Diversicare, and Advocat maintain that mutuality of obligation does exist in the Agreement, and that the inability of the NAF to hear the dispute does not preclude enforcement of the agreement to arbitrate. Further, Plaintiffs ask this Court to appoint a substitute arbitrator pursuant to Section 5 of the Federal Arbitration Act ("FAA").

The parties concede, and the Arbitration Agreement itself clearly states, that this dispute is governed by the FAA. The FAA provides, in relevant part, "[a] written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA allows a party to petition a United States district court for an order directing that "arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, ___ U.S. ___, 130 S. Ct. 1758 (2010).

I.  Validity of the Agreement:  Mutuality of Obligation

This Court will first examine Defendant Nowlin's contention that there was no mutuality of obligation between the parties.  In addressing complaints to compel arbitration, courts generally ask: (1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement.  *E.E.O.C. v. Woodmen of the World Life Ins. Soc.*, 479 F.3d 561, 565 (8th Cir. 2007).[1]  The FAA governs the enforceability of the Arbitration Agreement in this case, however, "[t]he validity of the agreement is determined by state contract law."  *Id*.  Under Arkansas law, the essential elements of a contract or an agreement are: (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual obligations, and (5) mutual agreement.  *Showmethemoney Check Cashers, Inc. v. Williams*, 342 Ark. 112, 119–20, 27 S.W.3d 361, 366 (2000).  Defendant only contends that the agreement lacked mutual obligation.  These other elements are not in dispute.

The Arkansas Supreme Court has clearly outlined what it means for two parties to be mutually obligated:

> A contract to be enforceable must impose mutual obligations on both of the parties thereto.  The contract is based upon the mutual promises made by the parties; and if the promise made by either does not by its terms fix a real liability upon one party, then such promise does not form a consideration for the promise of the other party. ... A contract, therefore, which leaves it entirely optional with one of the parties as to whether or not he will perform his promise would not be binding on the other.

*Showmethemoney*, 342 Ark. at 112 (quoting *Townsend v. Standard Indus., Inc.*, 235 Ark. 951, 954–955, 363 S.W.2d 535, 537 (1962)).  In the context of arbitration, for mutual obligations to be present, the agreement to arbitrate must actually bind both parties to arbitration.

---

[1]  The parties have conceded that Nowlin's claims in the State Court Action do fall within the scope of the Arbitration Agreement.  Therefore, the Court will not address this issue.

5

The Arbitration Agreement in the present case states:

> The Facility and Resident ... understand and agree that any legal dispute, controversy, demand, or claim that arises out of or relates to the Resident Admission Agreement or is in any way connected to the Resident's stay at the Facility and involves a matter or amount in controversy which is in excess of the sum of fifteen thousand dollars ($15,000) exclusive of interest, cost, and attorneys fees shall be resolved exclusively by binding arbitration; and not by a lawsuit or resort to other court process.
>
> (ECF No. 3, Exh. A).

Defendant's belief that the above provision lacks mutuality is premised on two contentions: (1) the only claim Plaintiffs could ever have had against former resident Nancy Jones would be for debt collection, and (2) there is no factual circumstance in which Nancy Jones could have ever owed Plaintiffs a debt more than $15,000 because her care and treatment at ONRC were being paid for by Medicare and Medicaid. Assuming this is correct, Plaintiffs would always have the ability to file suit against Jones because their claims would invariably amount to less than $15,000. In other words, by including this $15,000 threshold for arbitration, Plaintiffs have "removed themselves from the risk of submitting any of their disputes to arbitration." (Defendant's Brief, ECF. No. 7).

Defendant relies heavily on *Showmethemoney Check Cashers, Inc. v. Williams*, 342 Ark. 112 (2000), and other very similar cases, in an attempt to illustrate that mutual obligations do not exist in the Arbitration Agreement. In *Showmethemoney*, the Arkansas Supreme Court held that mutuality of obligation did not exist in an arbitration agreement between a customer and a check-cashing company. *Id*. at 121. The agreement provided that all disputes and controversies between the parties were to be arbitrated with the exception of claims brought by Showmethemoney Check Cashers "to collect the amounts due it." *Id*. at 117. The court reasoned that, because the only conceivable claim Showmethemoney could have against a customer would be a claim to "collect the amounts due it," the arbitration agreement lacked mutuality of obligation. The agreement had

"fixed no real liability on Showme" to arbitrate. *Id.* at 121. The same conclusion has been reached and the same reasoning employed in many cases dealing with similar arbitration agreements drafted by cash-advance companies. *See generally E-Z Cash Advance, Inc. V. Harris*, 347 Ark. 132, 60 S.W.3d 436 (2001); *The Money Place, LLC v. Barnes*, 349 Ark. 411, 78 S.W.3d 714 (2002); *National Cash, Inc. v. Loveless*, 361 Ark. 112, 205 S.W.3d 127 (2005).

The Court is not persuaded that there is a lack of mutual obligations in the Arbitration Agreement in this case. Unlike the factual scenario in *Showmethemoney*, it is certainly conceivable that Plaintiffs could have had a claim against Nancy Jones or her estate that would have compelled them to arbitrate. Defendant's claim that the only possible cause of action against Nancy Jones would be for debt collection and that Jones' debts could not exceed $15,000 are not plausible. There was no guarantee at the time of the agreement that Medicare and Medicaid would continue to fund Jones' care. If this funding were to cease, it is possible that a debt collection claim could have easily exceeded $15,000, thereby forcing Plaintiffs to arbitrate. Furthermore, as Plaintiffs point out in their cross motion, other causes of action against Jones were possible at the time the Agreement was signed, such as a claim arising from property damage.

The Arbitration Agreement is very broad in its coverage of claims. With the exception of the $15,000 threshold, no limitations exist as to the types of claims that are covered. There are any number of scenarios in which Plaintiffs might have been forced to arbitrate their claims against Jones. Therefore, this Court finds that the mutuality of obligation requirement has been met and that the Arbitration Agreement is a valid contract.

## II.  Application of Section 5 of the Federal Arbitration Act

Defendant Nowlin argues that, because the NAF is no longer accepting consumer-related arbitration claims based upon pre-dispute agreements, the unavailability of the NAF as a forum makes enforcement of the Arbitration Agreement legally impossible.  Therefore, even though the Court has found the Arbitration Agreement to be valid, under this line of reasoning, the parties would not be compelled to arbitrate their claims.

As mentioned previously, the FAA is controlling in this case, and the central dispute between the parties concerns the practical application of Section 5 of the FAA.  More specifically, the question before the Court is whether Section 5 allows a court to appoint a substitute arbitrator when the specifically named forum in an arbitration agreement cannot hear the parties' claims.  9 U.S.C. § 5  provides:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein ...

The majority of courts who have addressed whether a substitute can be appointed pursuant to Section 5 under these factual circumstances have utilized the approach set out in *Brown v. ITT Consumer Financial Corp.*, 211 F.3d 1217 (11th Cir. 2000).  In *Brown*, the court focused its inquiry on whether the reference to the forum named in the agreement was integral to the decision to arbitrate or merely a logistical or ancillary inclusion.  *Id.* at 1222.  The reasoning behind this distinction was articulated in *Jones v. GGNSC Pierre LLC*, 684 F.Supp.2d 1161, 1166 (D.S.D.

2010):

> When the reference to arbitration rules or an arbitration forum is merely "an
> ancillary or logistical concern," the application of Section 5 to appoint a
> different arbitrator does not do violence to the intentions of the parties. By
> contrast, when the choice of arbitration forum was integral to the agreement,
> such that the parties would not have agreed upon arbitration absent the selected
> forum, application of Section 5 to appoint a substitute arbitrator is more
> problematical.

While this "integral versus logistical" inquiry is the generally accepted way to analyze the application of Section 5, there is less agreement amongst the courts as to what qualifies as an integral provision. In *Brown*, the Eleventh Circuit held that, even though an arbitration agreement stated that claims would be resolved under the NAF Code of Procedure, a forum that was dissolved at the time, this fact alone was not enough to show that the choice of forum was an integral part of the agreement to arbitrate. 211 F.3d at 1222. In *Reddam v. KPMG LLP*, 457 F.3d 1054 (9th Cir. 2006), the Ninth Circuit reached the same conclusion when presented with a similar situation: "[W]e cannot agree that the customer agreement involved here became unenforceable between the parties when the NASD [the designated forum] bowed out. There is no evidence that [the] naming of the NASD was so central to the arbitration agreement that the unavailability of that arbitrator brought the agreement to an end." *Id.* at 1061. *See also Jones v. GGNSC Pierre LLC*, 684 F.Supp.2d 1161 (D.S.D. 2010)(holding that the unavailability of the NAF to hear the case did not make the agreement unenforceable because its inclusion was not integral, as evidenced by a severance clause in the agreement); *Adler v. Dell Inc.*, 2009 WL 4580739, at *3 (E.D. Mich. 2009)(holding that the unavailability of the NAF to hear the case did not make the agreement unenforceable because there was no evidence that the choice of the NAF as a forum was "as important a consideration as the agreement to arbitrate itself.").

9

There is a comparable amount of case law that arguably takes a different view as to whether the inclusion of a particular forum is an integral provision in an agreement to arbitrate.  In *Ranzy v. Tijerina*, 393 Fed.Appx. 174, 176 (5th Cir. 2010), the court held that the "mandatory not permissive" language contained in the agreement stating that the parties "shall" submit all claims to the NAF showed a specific intent that only the NAF be used as a forum, thereby, making the use of the NAF integral to the agreement.  Various courts have made similar findings: *Carr v. Gateway, Inc*., 241 Ill.2d 15, 944 N.E.2d 327 (Ill. 2011)(finding that merely naming the NAF as the forum is not enough to make that designation integral to the agreement, however, a penalty provision in the agreement penalizing a party for bringing a claim outside the NAF was evidence that the designation was integral); *Rivera v. American General Financial Services Inc*., 150 N.M. 398, 259 P.3d 803, 815 (N.M. 2011)(holding that mandatory language such as "shall" and the "pervasive references to the NAF in the contract" showed that the designation of the NAF was integral to the agreement); *Stewart v. GGNSC-Canonsburg*, L.P., 9 A.3d 215, 221 (Penn. 2010)(holding the designation of the NAF as integral where the agreement stated that the parties "'shall' submit all claims to the NAF ... and that the procedural rules of the NAF 'shall' govern the arbitration.").

After reviewing the Arbitration Agreement in this case and relevant authority, the Court is of the opinion that the designation of the NAF as the arbitral forum was not integral to the parties' decision to arbitrate. The plain language of the agreement shows that the parties' primary and overriding concern was that claims in excess of $15,000 be submitted to arbitration, not that they be arbitrated with the NAF.

First, the Agreement contains a severance provision that clearly allows for arbitration to go forward even where a portion of the agreement is held to be indefinite or invalid.  As the South Dakota District Court noted in *Jones*, "the severance provision indicates that the intention was not

to make the [designated forum] integral, but rather to have a dispute resolution process through arbitration."  684 F.Supp.2d at 1167.

Second, reference to the NAF was minimal in the Arbitration Agreement.  Furthermore, when it was mentioned, permissive language, as opposed to mandatory language, was used.  The agreement states, "[i]nformation may be obtained and claims *may* be filed at any office of the National Arbitration Forum." (emphasis added).  This permissive language is markedly different from the mandatory "shall" language used in the agreements where courts have found the designation of a forum to be integral.  The language here is also distinguishable from these other cases in that, references to the NAF are not "pervasive."  In fact, the NAF was only referenced once in the three-page agreement.  This lack of mandatory language and lack of focus on the NAF as the exclusive forum is further evidence that the NAF was not a primary concern of the parties when making the decision to arbitrate.

The above facts must be viewed in light of the "liberal federal policy favoring arbitration agreements" found in the FAA.  *Moses H. Cone Memorial Hospital v. Mercury Construction Corp*., 460 U.S. 1, 24, 103 S.Ct. 927, 941 (1983).  *See also Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221, 105 S.Ct. 1238, 1242 (1985)("[t]he preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which parties had entered," a concern which "requires that we rigorously enforce agreements to arbitrate.").  As the Court has reviewed the Arbitration Agreement to ascertain the intention of the parties, it has done so while noting that these "intentions are generously construed as to issues of arbitrability."  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 626, 105 S.Ct. 3354 (1985).  There is no reason to deduce from the Arbitration Agreement in this case that an agreement between the parties would not have been reached had the NAF not been the designated forum.  The agreement clearly shows an

11

overriding intention that claims be arbitrated, not that they be arbitrated exclusively with the NAF. Therefore, it cannot be said that the selection of the NAF as a forum was an integral provision.  For this reason, it is appropriate for the Court to appoint a substitute arbitrator pursuant to FAA § 5.

### III.  Selection of a Substitute Arbitrator

The Court instructs Plaintiffs and Defendant to agree on an alternate arbitrator for the Court to appoint. If the parties fail to come to an agreement within 30 days from the date of entry of this order, the parties shall submit a list to the Court identifying proposed arbitrator(s) for appointment, and the Court will appoint an arbitrator from this list.

### CONCLUSION

For the reasons state above, the Court finds that Defendant Barbie Nowlin's Motion for Summary Judgment against Plaintiffs (ECF No. 6) is **DENIED**.  Plaintiffs ONRC, Diversicare, and Advocat's Cross-Motion for Summary Judgment (ECF No. 9) is **GRANTED**.  All state court proceedings in connection with Defendant Barbie Nowlin's claims against Plaintiffs are enjoined pending arbitration. It is further **ORDERED** that Plaintiffs and Defendant notify the Court within 30 days of the name of an arbitrator that they have agreed upon the Court to appoint.

IT IS SO ORDERED, on this 18th day of November, 2011.

/s/ Susan O. Hickey
Hon. Susan O. Hickey
United States District Judge

12